**Walter JONES, et al., Plaintiffs,**

v.

**CITY OF BUFFALO, et al., Defendants.**

No. 92–CV–345S.

United States District Court, W.D. New York.

Oct. 17, 1994.

Walter L. Jones, pro se.

Patricia R. Jones, pro se.

Michael B. Risman, Office of Corp. Counsel, Dept. of Law, Buffalo, NY, for City of Buffalo, James D. Griffin, Ralph V. Degenhart, R. Peter Morrow, III, Michael B. Risman, Kenneth Krempa, Michael Gasper, Dennis Allesi, Richard Smith, Reginald Hokes, George Fletcher and Lawrence K. Rubin.

F. David Rusin, Erie County Atty., Buffalo, NY, for County of Erie, David J. Swarts, F. David Rusin, Charles E. Craven, James W. McGill, David B. Kelly, and Mark A. Adrian.

Paul William Beltz, Buffalo, NY, for William A. Quinlan and Paul William Beltz.

Bryan G. Brockway, Cheektowaga, NY, for Mohammed K. Quayed.

Douglas S. Cream, State Atty. General's Office, Buffalo, NY, for Vincent E. Doyle, Peter B. Sullivan, and Joseph J. Sedita.

The numerous remaining defendants did not have appearance by counsel.

## DECISION AND ORDER

SKRETNY, District Judge.

### INTRODUCTION

Presently before this Court are numerous causes of action that were initiated in New York State Supreme Court or Buffalo City Court which have been removed to this Court by Walter Jones.[1] Generally stated, these petitions all relate to Jones' allegation that he has been the victim of a conspiracy to violate his civil rights. In addition to the present petitions, the claimed conspiracy has also been the subject of several prior state and federal court proceedings. As shall be discussed *infra*, these prior cases are of great significance with regard to this Court's handling of the present petitions.

Having reviewed the record kept in this matter, this Court shall, for the reasons set forth below, dismiss and/or remand all the causes of action presently pending under Docket No. 92–CV–345 and direct the Clerk of the Court to close the file and accept no future filings in this matter. Further, this Court shall reaffirm the injunction originally issued by the Honorable John T. Curtin and, as such, Walter Jones as well as all persons acting on his behalf are permanently enjoined from filing any future complaints or removing any state causes of action based on any of the claims set forth in the present case or the previous actions discussed herein. Finally, this Court shall direct the Clerk of the Court for the Western District of New York to accept no future filings from Walter Jones except in accordance with the procedure set forth herein.

### FACTS AND PROCEDURAL HISTORY

The history of the actions filed by Walter Jones ("Jones") is lengthy and exhaustive. Nevertheless, in an attempt to ensure that the claims Jones presently as well as previously asserted will never again unduly burden the judicial system, this Court shall endeavor to map the course of events that has led to the present Decision and Order.

Walter Jones is a litigious *pro se* litigant who has filed approximately sixty motions, affidavits, amendments, and demands since attempting to remove his state actions, Erie County Index Nos. 2611–91, 14730–91, and 1637–92, to federal court on May 22, 1992.

---

1. All causes of action removed to this Court under Docket No. 92–CV–345 have previously been dismissed and/or remanded to state court by this Court's Orders filed on June 24, 1994, and September 30, 1994. This Decision shall set forth the reasons for these two prior Orders.

The history of the present action can be traced to November 24, 1980, when Jones filed a civil action in federal district court for the Western District of New York under Docket No. 80–CV–1075. In that action, Jones alleged that the failure of the defendants to award construction contracts to Jones' corporation for the Niagara Falls Transit Authority Light Rail Project (the "Project") was a violation of his constitutional and statutory rights. Some of Jones' claims were dismissed by the Honorable John T. Elfvin on April 17, 1981 due to a lack of standing. On January 29, 1983, Jones filed civil action 83–CV–86 in an attempt to re-allege these claims. Judge Elfvin dismissed this action on February 11, 1985, and the Second Circuit affirmed this decision.

Jones' remaining claims in 80–CV–1075 were dismissed on April 15, 1987, based upon Jones' failure to comply with the Honorable Edmund F. Maxwell's, United States Magistrate Judge, discovery orders. The Second Circuit affirmed this dismissal on December 13, 1987. *See Jones v. Niagara Frontier Transp. Authority*, 836 F.2d 731 (2d Cir. 1987), *cert. denied*, 488 U.S. 825, 109 S.Ct. 74, 102 L.Ed.2d 50 (1988).

On December 10, 1987, Jones filed civil action 87–CV–1532 alleging constitutional and statutory violations, as well as bribery, embezzlement, perjury, conspiracy and other various acts against two hundred and twenty original defendants, including the Mayor of Buffalo, virtually every union and contractor in the Buffalo area that was connected in any way with the Project, and all of the attorneys who represented defendants in 80–CV–1075. The complaint alleged that the defendants conspired to embezzle and extort federal funds earmarked for minority contracts in the Project, and then used those funds to pay bribes to Judge Elfvin and Magistrate Judge Maxwell to induce them to render unconstitutional decisions in 80–CV–1075. The complaint also alleged that the defendants con-

spired to set·an arson fire at Jones' property at 1–19 Liberty Avenue. In a connected action, Docket No. 88–CV–887, Jones alleged that the United States Attorney General, Federal Bureau of Investigation, the present and former United States Attorneys, Assistant United States Attorney Marc Gromis, and the Clerks of the Court were involved in the improper dismissal of a racially mixed Grand Jury before which Jones testified in February 1988, and replaced it with an all white Grand Jury to investigate the fires at 1–19 Liberty Avenue. In addition, on February 24, 1989, Jones filed civil action 89–CV–253 seeking to remove tax foreclosure actions against three of his properties.

All three of these actions were assigned to Judge Curtin, who handling them simultaneously, dismissed them on June 9, 1989, by a Decision and Order read from the bench finding that the actions were "vexatious, harassing and duplicative ... [and had] put undue expense and burdens on the parties, on Court personnel, [and] the Court...." *Walter Jones v. City of Buffalo, et. al.*, Nos. 87–1532, 88–887, and 89–253 (W.D.N.Y. June 9, 1989). Further, pursuant to the All Writs Act, 28 U.S.C. § 1651(a), the court ordered that Jones be enjoined from filing any further lawsuits in federal or any other court that were related to the subject matter of the cases that had been dismissed by the court. The court also ordered that a procedure be created to permit the court to examine any papers that Jones attempted to file with the Clerk's office in the future to determine if the subject matter of such papers was related to the prior proceedings.[2]

Following the dismissal of his actions in federal district court,[3] Jones commenced Erie County Index No. 2611–91 in the State of New York Supreme Court on March 13,

---

2. Unfortunately, such a procedure was not adhered to at the time of the filing of the present action, and this Court was unaware of this aspect of Judge Curtin's Order. As a result, the present action was initiated without having to undergo this screening process.

3. This Court notes that Walter Jones also initiated several other civil actions in federal district

court under Docket Nos. 89–CV–1088, 89–CV–1117, and 90–CV–688, which also appear to have been dismissed. This Court finds it unnecessary to elaborate on the details for purposes of this decision. However, this Court does note that many of the same claims dismissed by Judge Curtin were likewise raised in 89–CV–1088 and dismissed by Judge Larimer.

1991. In this action, Jones wished to recover "treble, compensatory, special and punitive damages" against the defendants for their conspiracy and involvement in the arson, destruction, and unlawful demolition of the plaintiff's property at 1–19 Liberty Avenue. Based on these allegations as well as this Court's review of the complaints, motions, and affidavits filed by Jones in connection with Erie County Index No. 2611–91, it is clear that that action was directly related to the subject matter of the federal actions that were dismissed by Judge Curtin.

New York State Supreme Court Justice Joseph J. Sedita dismissed Erie County Index No. 2611–91 on October 8, 1991. Justice Sedita stated that the actions were "baseless and without merit, and can be viewed as an unwarranted harassment of these defendants." *Walter Jones v. City of Buffalo et. al.*, Erie County Index No. 2611–91, Memorandum Decision dated Oct. 8, 1991. Justice Sedita also enjoined the plaintiff from filing any similar motions in state court. Jones then filed motions to vacate the order of dismissal and to renew his action, but Justice Sedita denied these motions by Orders dated January 13, 1992 and January 31, 1992, as well as directed that the Erie County Clerk's Office not accept any further motion papers from the plaintiff that involved related subject matter. Although his action was dismissed, Jones attempted to file judgments dated April 30, 1992, against the named defendants. The attempt to file these judgments was raised as part of an Order to Show Cause heard by New York State Supreme Court Justice Vincent E. Doyle, which shall be discussed *infra*.

Jones also initiated two further actions under new state docket numbers after receiving the adverse rulings from Justice Sedita. First, he instituted an action under Erie County Index No. 14730–91 on April 23, 1992, by filing a forty-two page complaint which reiterates allegations identical to those asserted in the previous federal and state actions. The complaint also includes a claim relating to the execution of a search warrant, lawfully issued by County Court Judge D'Amico, on February 11, 1992, during which Jones apparently threatened an IRS agent with a shotgun. Representatives of the Unit-

ed States Bureau of Alcohol, Tobacco and Firearms have indicated that the possession of a firearm was illegal because of Jones' prior felony conviction. Second, Jones filed a one hundred thirty-eight page complaint under Erie County Index No. 1637–92 on April 29, 1992, asserting essentially the same allegations of conspiracy relating to the Project and fire at 1–19 Liberty Avenue that had been identified in his other actions.

On May 4, 1992, Justice Doyle signed an Order to Show Cause with respect to Erie County Index Nos. 2611–91, 14730–91, and 1637–92, with a hearing to be held on May 11, 1992. The Order directed Jones to show cause why the actions should not be dismissed and he should not be held in contempt. Following argument at the Order to Show Cause hearing, Justice Doyle granted Jones until May 14, 1992, to respond to the pleadings of defendants.

On May 22, 1992, Jones, rather than respond to the show cause proceedings before Justice Doyle, filed a petition for removal of Erie County Index Nos. 2611–91, 14730–91, and 1637–92 to federal court and effectively brought all proceedings in state court to a halt. These actions are currently filed in the Office of the Clerk of the Court for the Western District of New York under Docket No. 92–CV–0345.

Jones has filed six amended/supplemental removal petitions since his original petition of May 22, 1992. On June 10, 1992, Jones filed an Amended Consolidated Notice of Petition for Removal ("First Amended Petition"). This petition sought to remove Erie County Index No. 1049–88, a cause of action essentially intertwined with Erie County Index Nos. 2611–91, 14730–91, and 1637–92. Jones thereafter filed a Supplemental Petition for Removal ("Second Amended Petition") on August 13, 1992. The petition sought to remove Erie County Docket No. 8950–89 wherein Jones was a defendant and third-party plaintiff. The lawsuit was brought on behalf of a fireman who was killed in fighting a fire that destroyed Jones' warehouse at 1–19 Liberty Avenue on February 2, 1988. In conjunction with his Second Amended Petition, on August 14, 1992, Jones filed an Ex Parte Motion seeking various forms of relief,

including leave to file the Second Amended Petition. ("Ex Parte Motion"). This motion did not attempt to remove any additional actions from state court other than Erie County Index No. 8950–89. Along with the Second Amended Petition of August 13, 1992, Jones also filed a Verified Civil Rights and Suit in Equity Complaint, which essentially asserts the same conspiracy theory that pervades all of his legal actions. Jones then filed a Notice of Filing Additional Supplemental Petition for Removal ("Third Amended Petition") on September 17, 1992, again seeking to remove Erie County Docket No. 8950–89. On September 21, 1992, Jones filed a Notice of Filing of Another Additional Supplemental Petition for Removal ("Fourth Amended Petition") wherein he again sought removal of Erie County Index No. 1637–92 because the Honorable Joseph D. Mintz, Justice of the New York Supreme Court, issued an Order dismissing this cause of action on September 14, 1992. All of these removal petitions involve essentially similar or identical causes of action asserted by Jones, and in some instances contain specific references to Jones' prior federal court actions as supporting his present legal claims.

More recently, Jones filed two additional removal petitions supplementing the causes of action removed to Docket No. 92–CV–345. First, on May 27, 1994, Jones filed a Consolidated, Supplemental Removal Petition ("Fifth Amended Petition") seeking to remove actions filed against him in Buffalo City Housing and Traffic Court identified as H–04663–92 and H–0368–94. Jones asserts that the traffic tickets and Housing Court actions are part of the overall "retaliatory conspiracy" against him. (Fifth Amended Petition at pp. 1–3.) Jones most recently filed, on June 14, 1994, a Supplemental Removal Petition ("Sixth Amended Petition") wherein he sought to remove an action initiated against him to enjoin him as well as other "African American defendants, from protesting the violations of their civil rights." (Sixth Amended Petition at ¶ 4.) Jones asserts that the action should be "joined with related state court actions; as consolidated, and filed under WDNY Federal Civil Docket No. 92–345S." (Sixth Amended Petition, Jones Aff.) For reasons to be explained herein, this Court *sua sponte* filed an Order on June 24, 1994, remanding the causes of action underlying these two most recent petitions to the state court system.

Jones' allegations in the present actions essentially have as their genesis his claims regarding the NFTA Project and the alleged arson of the Jones' property at 1–19 Liberty Avenue. Although some new events have been alleged in the lawsuits which have followed Jones' original causes of actions based on the Project and the fire, essentially what Jones has done in each successive lawsuit has been to expand upon his conspiracy theory. In fact, the nature of these subsequent actions is such that each attorney who has opposed Jones and each judicial officer who has ruled against Jones has been named as a defendant in the following action. As a result, the present causes of action name as participants in the alleged conspiracy not only all of the presiding federal court judges in the Western District of New York, but also numerous Appellate Judges of the Second Circuit Court of Appeals, as well as the Clerk of the Court for the United States Supreme Court. (*See* Motion to Disqualify at pp. 2–5 & ¶¶ 12, 23–27; Ex Parte Motion, Jones Aff. ¶¶ 16(b), 17(a), 43, 46, 50, 52, 54, 57–58, 60, 81–87, 101–115.)

The docket sheet in this case reflects that there are numerous motions and other matters presently pending. Rather than provide an exhaustive listing of these matters, this Court shall identify those which are significant to the present Decision and Order. First, defendant City of Buffalo filed a motion to dismiss on July 20, 1992. Second, a request from Jones to proceed *in forma pauperis* filed on August 11, 1992. Third, a motion to disqualify this Court from this action and transfer venue to the District of Columbia filed on September 4, 1994. ("Motion to Disqualify.") At the present time, no action has been taken regarding these motions. Fourth, this Court's Order of August 27, 1992, directing that all other matters in this action would be held in abeyance pending this Court's determination of whether Jones' removal petition was contrary to Judge Curtin's aforementioned Order. Finally, an Order referring all pretrial matters,

including dispositive motions, to the Honorable Leslie G. Foschio, United States Magistrate Judge, filed on September 21, 1992.

## DISCUSSION

As noted previously, this action was referred to Magistrate Judge Foschio pursuant to 28 U.S.C. § 636(b)(1) in September 1992. However, this Court shall revoke its Referral Order filed on September 21, 1992, and proceed to address and resolve the matters presently pending in this action.

### I. Motion for Disqualification and Transfer of Venue to District of Columbia

Initially, I must address Jones' motion to disqualify and transfer venue to the District of Columbia. Jones has essentially identified two bases for my disqualification. First, he asserts that disqualification is necessary "due to Judge Skretny being an employee of the Erie County District Attorney's Office, from which the conspiracy against Deponent WALTER L. JONES' rights, and property originated by former Erie County District Attorney, Richard J. Arcara." (Jones Aff. ¶ 12.) Moreover, Jones asserts that "Judge WILLIAM SKRETNY ... fraudulently entered an unconstitutional and fraudulent order upon a falsified letter from the City of Buffalo attorney defendants, in violation of the due process and equal protection clauses of the Fourteenth Constitutional Amendment." (Jones Aff. ¶ 19.) Based on the foregoing as well as other similar allegations, Jones seeks "[a]n order recusing and disqualifying this court Judge from further presiding in this action, pursuant to Title 28 USC, sections 455(a)(b)(1)(2)." (Jones Aff., WHEREFORE CLAUSE (b).)

 Upon considering Jones allegations in view of the legal standards set forth in 28 U.S.C. § 455 and the Supreme Court's recent explanation of those standards in *Liteky v. United States*, —— U.S. ——, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), I find Jones' motion for disqualification to be unsupported. First, the August 27, 1994, Order challenged by Jones as "unconstitutional and fraudulent" was a mere scheduling order and did not constitute a ruling against Jones. Moreover, even if this Order could be construed as

adverse to Jones, "judicial rulings alone almost never constitute [a] valid basis for a bias or partiality motion." *Id.*, at ——, 114 S.Ct. at 1157. Finally, Jones has alleged that I possess "extrajudicial" information regarding his case based on my prior employment at the Erie County District Attorney's Office where I worked with the Honorable Richard J. Arcara, United States District Court Judge and former Erie County District Attorney. However, during none of my prior affiliations have I worked on or been asked to contribute my opinions regarding any of Jones' prior lawsuits. More importantly, my prior associations have not provided me with an "extrajudicial source" of information regarding the specifics of Jones' present or prior lawsuits. There is simply no basis for his claim that I am biased or prejudiced against him.

 Finally, it is apparent that Jones employs a litigation tactic by which he moves for disqualification or recusal of any judge who has or Jones believes will rule against him. In this regard, I find it relevant to note the comments and findings of the Honorable David G. Larimer when faced with a similar disqualification motion following his ruling against Jones when Erie County Index No. 8950–89 was originally removed to federal district court in 1989:

> Obviously disgruntled at my decision, Jones now seeks to sue me on the grounds that my dismissal of his third-party complaint in connection with his motion to proceed *in forma pauperis* was a violation of the Constitution and at least sixteen separate statutory provisions. Because he has attempted to sue me and because several other judges in Buffalo were named in the original third-party complaint, Jones seeks my recusal and the wholesale transfer of the case to Washington, D.C.

> It is significant that Jones has had matters before three district judges in this district, Judges John T. Elfvin, John T. Curtin and now me. Soon after each of us ruled against Jones, we were named as defendants.

> I was not named originally in the third-party complaint that was the subject of my

decision of December 14, 1989. It was only after I ruled against Jones that he determined that I too was part of the elaborate "conspiracy" that he has alleged and he now seeks to add me as a defendant. It is clear, however, that the only reason for adding my name to the long list of defendants is my unfavorable ruling against Jones.

In my view, this tactic of suing federal judges and then seeking their disqualification is nothing more than a tactic to delay and frustrate the orderly administration of justice. Judges should not be held hostage to this kind of tactic and automatically recuse themselves simply because they or their fellow judges on the court are named defendants in a truly meritless lawsuit.... [Section 455] has been repeatedly construed by the courts as not requiring automatic disqualification of a judge in circumstances such as this.... Otherwise, § 455 could be used as a vehicle to engage in judge-shopping, and to "manipulate the identity of the decision maker." To let such a motion succeed absent a legally sufficient basis would allow any litigant to thwart the legal process by merely filing a complaint against the judge hearing the case.... It is clear that a judge is not disqualified under 28 U.S.C. § 455 merely because a litigant sues him. I am convinced that if I disqualify myself and the case is reassigned to one of the few remaining judges in this district who have not yet been named as a defendant, if they rule contrary to Jones perceived interests, eventually they will also be named as a defendant. Even if the case is transferred to some other judge in another district, there is every expectation based on past history that Jones' list of defendants will be increased accordingly to include that judge.

Section 455(a) also does not require recusal. That section requires disqualification when the judge's impartiality might "reasonably" be questioned. The inquiry is an objective one. The appropriate test for disqualification is whether a "reasonable person" with knowledge of all the facts would be led to the conclusion that the judge's impartiality might be questioned.

In my view, under this test a reasonable person with access to all the relevant facts would not question the Court's impartiality. Courts have an obligation and duty to sit when there is no valid reason not to do so. Reassignment or transfer of a case are serious matters that affect the parties as well as the new judge.

Docket No. 89–1088, Decision and Order dated March 20, 1990, pp. 3–5 (citations omitted). Whereas Jones has made similar arguments in the present case, I find it appropriate to adopt the statements of Judge Larimer in full as part of my ruling on Jones' present motion to disqualify.

Therefore, because Jones has failed to demonstrate that disqualification or recusal is appropriate in this case, his motion for disqualification and transfer of venue to the District of Columbia shall be denied.

## II. *Request to Proceed In Forma Pauperis*

■ This Court has reviewed Jones' affidavit in support of his request to proceed *in forma pauperis* filed on August 11, 1992, as well as the supporting documentation attached thereto. Upon consideration of these submissions, this Court shall grant Jones' request to proceed as a poor person in this matter.

The same statute that allows a litigant to commence a civil or criminal action in federal court *in forma pauperis* "authorizes federal courts to dismiss [such] a claim ... 'if satisfied that the action is frivolous or malicious.'" *Neitzke v. Williams*, 490 U.S. 319, 324, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989) (citing 28 U.S.C. § 1915(d)). In *Neitzke* the Supreme Court went on to state that

Section 1915(d), is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suits and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the

authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

*Id.* 490 U.S. at 327, 109 S.Ct. at 1833.

Affording Jones' petitions and other submissions the liberal reading due pleadings filed by *pro se* litigants, *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), *reh'g denied,* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972), this Court finds that the causes of action he has commenced as a plaintiff in state court must be dismissed with a limited remand for the purpose of assessing whether Jones should be sanctioned, and those wherein Jones is named as a defendant must be remanded. The basis for these findings shall be discussed more thoroughly below, however, at present two significant points must be noted. First, as Jones is proceeding *in forma pauperis* in this action, this Court has the "unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke v. Williams,* 490 U.S. at 327, 109 S.Ct. at 1833. Exercising such authority, this Court finds Jones' conspiracy allegations to be utterly baseless and delusional, and that his litigation tactics, in general, are of malicious design and intent. These allegations are present in all of the causes of action Jones has removed or attempted to remove to this Court as well as the complaint which Jones filed on August 13, 1992. Second, the conspiracy theories which were the basis for Jones' prior causes of action and which Judge Curtin forever barred Jones from reinitiating in this or other courts pervade the record of this action and are, at least in part, the identified basis for federal jurisdiction over these actions. Thus, Jones' actions are also barred by Judge Curtin's Order. These findings provide separate and independent grounds justifying dismissal and/or remand of all the identified causes of action.

### III. *Procedural Defects as Grounds for Remand of the Removed Actions*

Preliminarily, this Court wishes to comment on a procedural tactic employed by Jones which appears designed to serve two purposes: (1) circumvent Judge Curtin's Order; and (2) avoid the payment of filing fees. Specifically, Jones has consecutively removed state causes of action which are wholly unrelated but for the deluded conspiracy which Jones claims underlies them all. In this regard, although Jones has moved for consolidation with each successive petition, even upon the most superficial scrutiny, it is clear that his requests for consolidation are wholly lacking in merit. Unfortunately, during the early stages of this case these matters were not addressed promptly. Nevertheless, to the extent that Jones' request to consolidate these successive actions are meritless, this finding alone is sufficient to warrant remand of the causes of action Jones has attempted to remove by his Second through Sixth Amended Removal Petitions.

### A. Erie County Index Nos. 2611–91, 14730–91, 1637–92, and 1049–88

On July 20, 1992, defendant City of Buffalo ("defendant") filed a motion seeking an order "dismissing the above-noted action ... and [for] such other and further relief as to the Court to deem just and proper." (Notice of Motion, Cover Page.) This motion seeks dismissal of the identified actions based on Judge Curtin's Order as well as principles of res judicata and collateral estoppel. (Risman Aff. ¶¶ 4–7, 10, and 11.) In addition, defendant City of Buffalo also noted that "28 U.S.C. § 1446 authorizes only a defendant to remove an action to Federal Court." (Risman Aff. ¶ 9.) Specifically, this motion pertains to Jones' state causes of action identified as Erie County Index Nos. 2611–91, 14730–91, 1637–92, and 1049–88 which were removed to this court via Jones' original removal petition as well as his First, Second and Fourth Amended Petitions. Defendant argues that Jones' removal of these causes of action is improper, the logical consequence of which is that these actions must be remanded to state court. As such, this Court shall initially analyze this argument and treat this aspect of defendant's motion as one for remand.

The provisions governing the procedure for removal of actions from state to federal court are set out in 28 U.S.C. §§ 1441–1452. The current statute permits removal by defendants in certain specified situations. *See, e.g.,* 28 U.S.C. § 1441(a) & (b) (defendants in diversity actions); 28 U.S.C. § 1441(b) (actions involving federal question jurisdiction); 28 U.S.C. § 1441(c) ("cause of action within the jurisdiction conferred by section 1331 . . ."); 28 U.S.C. § 1442 (a cause "against a member of the armed forces of the United States"); 28 U.S.C. § 1443 (civil rights cases). However, the removal of a case from state to federal court is a right available only to a defendant or defendants. This conclusion is supported by several considerations.

▮▮▮▮ First, the express language of the removal provisions grants the right of removal only to defendants. For example, § 1441(a), "Actions removable generally," states that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by *the defendant or the defendants,* to the district court of the United States . . . ." (emphasis added). Similarly, § 1443, "Civil rights cases," states that "[a]ny of the following civil actions or criminal prosecutions, commenced in a State court may be removed by *the defendant* to the district court of the United States . . . ." (emphasis added). Finally, § 1446 entitled "Procedure for removal" states that "(a) A *defendant or defendants* desiring to remove any civil action or criminal prosecution from a State court shall . . . ." (emphasis added). In addition, interpreting this language to restrict the right of removal to defendants is consistent with the purpose of the removal statutes. The process of removing a case from state to federal court was statutorily created to permit *a defendant* to substitute a forum of his or her own choosing that has jurisdiction. 14A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3721 (1985). The removal statutes intentionally "restrict the right [of removal] to the party who had no choice of forum." *Victorias Milling Co. v. Hugo Neu Corp.,* 196 F.Supp. 64, 68 (S.D.N.Y.1961). Finally, numerous courts have either explicitly or implicitly recognized

that only defendants have a right to remove a cause of action to federal court. For instance, in the case of *In re Walker,* 375 F.2d 678 (9th Cir.1967), the Ninth Circuit Court of Appeals stated that "[n]o right [of removal] exists in favor of a person who, as plaintiff, has filed an action in the state court, to cause the removal of such action to a federal court." *Id.,* 375 F.2d at 678. More recently, the Second Circuit, when squarely faced with this issue, stated "the [district] court was correct in its observation that there was not authority permitting [plaintiff] to remove his own action to federal court." *Hamilton v. Aetna Life & Casualty Co.,* 5 F.3d 642, 644 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1100, 127 L.Ed.2d 413 (1994); *see also Oregon Egg Producers v. Andrew,* 458 F.2d 382, 383 (9th Cir.1972) (citing *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941)) & *Conner v. Salzinger* 457 F.2d 1241 (3d Cir.1972). Based on the foregoing, it is clear that Jones had no authority to remove the actions identified as Erie County Index Nos. 2611–91, 14730–91, 1637–92, and 1049–88, and, as such, his removal of these actions was improper.

▮▮▮▮ It would seem that these defects in Jones' removal of the identified state court actions necessitate remand to state court. As noted by the Second Circuit, "[a]n action removed other than in accordance with the statutory provisions may be remanded to state court." *Hamilton v. Aetna Life & Casualty Co.,* 5 F.3d at 643. However, all remands to state court must be done in accordance with § 1447(c) which provides that "[a] motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under § 1446(a)." Based on this provision, any motions to remand or *sua sponte* decisions to remand which are premised on procedural defects, such as the motion in present in this case, must be filed within thirty days of the filing of the notice of removal; otherwise such defects are waived. *Hamilton v. Aetna Life & Casualty Co.,* 5 F.3d at 644; *Air–Shields, Inc. v. Fullam,* 891 F.2d 63, 65 (3d Cir.1989).

In the present case, Jones filed the notice of removal with respect to Erie County Index Nos. 2611–91, 14730–91, and 1637–92 on May 22, 1992. Defendant City of Buffalo was served with the Federal Removal Petition on May 26, 1992. (*See* Affidavit of Service, Docket Entry # 2). Defendant City of Buffalo did not file a motion to remand the case within thirty days of such service. However, Jones later filed an Amended Consolidated Notice of Filing Petition for Removal on June 10, 1992. This was permissible as a "petition may be amended freely prior to the expiration of the 30–day period for seeking removal." Wright, Miller, & Cooper, *supra*, at § 3733. By filing this amended petition, Jones sought to add Erie County Index No. 1049–88 to the claims removed under Docket No. 92–CV–345.[4] The affidavit of service shows that this document was not served until July 14, 1992, thirty-five days after its filing. Three days later, on July 17, 1992, defendant City of Buffalo responded to the amended petition by filing a motion to dismiss/remand. Moreover, after the motion to remand was filed, Jones filed several additional amended/supplemental removal petitions. Of these, his Fourth Amended Petition filed on September 17, 1992, again sought removal of Erie County Index No. 1637–92. Thus, the present remand motion was filed fifty days after service of the original notice of, but no more than three days from, the service of Jones' subsequent amended removal petitions.

At first glance, it appears that the Second Circuit's decision in *Hamilton* is controlling and that defendant's motion to remand, based on procedural grounds, must be denied because the motion was brought more than thirty days after the filing of the notice of removal. However, unlike *Hamilton*, this case involves the question of whether the opportunity to file a motion to remand on procedural grounds is renewed upon the filing of an amended removal petition. Thus, the critical issue which must be resolved is to determine the effect of amending a petition for removal on the thirty day time period for the opposing party to file a petition for remand.[5]

From this Court's review of the relevant case law, it appears that the question of whether amendment of a petition for removal provides an opposing party with a renewed opportunity to move for remand of the action is a relatively novel one. However, this Court finds that extrapolation of several well-recognized legal principles leads to the common sense conclusion that it must.

The only provision in the removal statutes which addresses the question of amendment to a removal petition is § 1446(b), which provides that an amended removal petition may be filed within thirty days of the defendant's "receipt" of the initial removal petition. *See Gafford v. General Electric Co.,* 997 F.2d 150, 164 (6th Cir.1993). However, the statutes are silent as to whether a petition may be amended outside this thirty day window and the effect of such amendments upon the right of an opposing party to file a motion to remand. Despite this statutory silence, " '[v]irtually all of the commentators and the great weight of judicial authority favor the rule' " recognizing " 'that the time has come to apply the principles of modern pleading relating to amendments to removal petitions, and that amendments should be [liberally] permitted.' " *Id.* (quoting *Stanley Electric Contractors, Inc. v. Darin & Armstrong Co.,* 486 F.Supp. 769, 772–73 (E.D.Ky.1980)); *Tech Hills II Assocs. v.*

---

4. According to Jones, Erie County Index No. 1049–88 involves another Order to Show cause which contains "the same unlawful, and unconstitutional restraints and intimidation threats, of imprisonment ... [as those in] Index Nos. 2611–91, 14730–91, and 1637–92." (Amended Consolidated Notice of Filing Petition for Removal, Docket Entry # 5, ¶ 4.)

5. Because Jones filed several amended/supplemental removal petitions after defendant City of Buffalo moved for dismissal/remand on July 17, 1992, it is unnecessary to resolve the question of whether the thirty day period in which a motion to remand may be brought commences from the date the removal petition is filed or the date of service on a particular defendant because it is clear that the remand motion was brought earlier than thirty days after the filing of these later amended/supplemental removal petitions. Therefore, the only issue is whether the thirty day period in which a motion to remand must be brought runs anew upon the filing of an amended/supplemental removal petition.

*Phoenix Home Mut. Ins. Co.*, 5 F.3d 963, 969 (6th Cir.1993), *reh'g denied,* (6th Cir. Oct. 12, 1993); *Armada Coal Export, Inc. v. Interbulk, Ltd.*, 726 F.2d 1566 (11th Cir.1984). The conclusion in the cited cases was applied to allow defendants who had removed actions to federal court an opportunity to cure jurisdictional defects in their removal petitions after the statutory period for filing such amendments had technically expired. It would seem implicit to adopting such a rule that a party who may wish to oppose removal should be provided with an additional opportunity to file such a challenge. Absent such a rule, a party's amended removal petition would effectively be insulated from challenge.

The necessity of allowing opposing counsel an opportunity to respond to amended pleadings is expressly recognized in Federal Rule of Civil Procedure 15 "Amended and Supplemental Pleadings." Rule 15(a) permits a party to amend a pleading "once as a matter of course at any time before a responsive pleading is served or ... at any time within 20 days after it is served" if no responsive pleading is permitted. The Rule further states that "[a] party shall plead in response to an amended pleading within the time remaining for response to the original pleading or *within 10 days after service of the amended pleading, whichever period may be the longer,* unless the court otherwise orders." (emphasis added). However, it is uncertain whether the term "pleading" as used in Rule 15(a) should be defined to include a petition for removal.

■ Generally, "pleading" has been defined, consistent with Federal Rule of Civil Procedure 7(a), to include: a complaint, an answer, a reply to a counter-claim, an answer to a cross-claim, a third-party complaint, a third-party answer, and a reply to an answer or third-party answer. Although removal petitions and motions for remand are not specifically identified, this Court does not "believe that the word 'pleadings' ... [should be] restricted to those papers set forth in Rule 7(a)." *Carter v. American Bus Lines, Inc.*, 22 F.R.D. 323, 326 (D.Neb.1958). Instead, the concept of "pleadings" should receive a "liberal interpretation" in appropriate circumstances. With respect to removal petitions, this Court notes several considerations which justify its treatment as a pleading. Much like a complaint, it is the first document filed in a lawsuit proceeding in federal district court and, in this regard, provides the foundation for the lawsuit. Moreover, it is also the instrument which contains the allegations which attempt to establish the basis for federal jurisdiction. Finally, the initial petition is subject to jurisdictional attack on both procedural and substantive grounds via a motion to remand much the same as a complaint is subject to a motion to dismiss on similar grounds.[6] For these reasons, this Court finds that a petition for removal is a statutorily created "pleading" and, as such, Rule 15(a) should be applied to amendments to a petition for removal. Therefore, in accordance with Rule 15(a), this Court finds that defendant City of Buffalo timely filed its motion to remand on the grounds that Jones' removal petitions are procedurally defective in that they have been filed by Jones, who is the plaintiff. Thus, this Court may remand Erie County Index Nos. 2611–91, 14730–91, 1637–92, and 1049–88 because Jones' attempt to remove them to this Court did not satisfy the requirements of the removal statute.

## B. Erie County Index No. 8950–89

Jones filed his Third Amended Removal Petition on August 13, 1992, intending to remove to this Court Erie County Index No. 8950–89 wherein Jones was a defendant and third-party plaintiff.[7] No challenge to this

---

6. It is also significant that in filing his amended/supplemental removal petitions Jones specifically identified Federal Rule of Civil Procedure 15 as providing the legal basis for granting such relief. Accordingly, to the extent that he expressly relied on and sought to invoke this Rule, he implicitly acquiesced to those aspects of the Rule which would provide defendants with an additional opportunity to move against his petition.

7. In a connected maneuver, Jones filed a civil rights complaint on August 13, 1994. This complaint named as defendants the plaintiff and plaintiff's counsel who had initiated the civil action against Jones in Erie County Index No. 8950–89.

removal was raised by counsel or this Court *sua sponte* within thirty days.

Nevertheless, amendment of a removal petition is only permitted as a matter of right within thirty days of the filing of the original petition. Beyond this period, amendments are only permitted upon leave of the court. When appropriate, such leave is to be given freely. However, in this case the proposed amendment of the petition to consolidate Erie County Index No. 8950–89 with the other previously removed actions is frivolous. The only basis for consolidation of these actions is Jones' conspiracy theory which, as shall be discussed below, is baseless. As such, this Court shall not grant leave to amend the petition to add Erie County Index No. 8950–89. To the extent that it appears that the Clerk of the Court or the parties may have treated Jones' motion to amend the petition to add Erie County Index No. 8950–89 as an actual removal of this action, this Court directs that the matter shall be "remanded" to state court.

Finally, as shall be discussed *infra*, the claims asserted in the Third Amended Petition are substantively defective in that Judge Larimer previously dismissed all of Jones' third-party actions in the case when it was previously removed to federal court under Docket No. 89–CV–1088.

### C. Jones' Removal Petitions of May 27, 1994 and June 14, 1994

By these petitions, Jones attempted to consolidate actions against him in City of Buffalo Housing and Traffic Court as well as New York State Supreme with Erie County Index Nos. 2611–91, 14730–91, 1637–92, and 1049–88. Based on this Court's finding that these petitions are defective, these actions were remanded to state court by summary order on June 24, 1994.

These actions were remanded for several reasons. First, they were not properly removable to Docket No. 92–345. Again, the only common thread connecting these actions to Jones' previous actions was his baseless conspiracy theory. Moreover, Jones' attempt to amend his petition to include these actions occurred more than thirty days after the filing of his original petition. Based on these considerations, this Court found consolidation and amendment of the removal petition to add these causes of action inappropriate. Accordingly, it was ordered that these actions be remanded to state court. Further, as shall be discussed *infra*, these petitions were also substantively defective because there existed no legitimate basis for exercising federal jurisdiction.

### D. Conclusion as to Appropriateness of Remand

Based on the foregoing analysis, Jones' removal of Erie County Index Nos. 2611–91, 14730–91, 1637–92, and 1049–88 on May 22, 1992, and June 10, 1992, was improper and has been attacked by timely challenge. As such, this Court has authority to remand these matters to state court. However, as shall be explained below, there are also several grounds which justify dismissing rather than remanding these matters. In this regard, this Court notes that it is more appropriate to dismiss these matters at the present time in order to avoid the needless waste of further judicial resources. In addition, there are procedural defects with the removal of Erie Index No. 8950–89 as well as the causes of action attempted to be removed by Jones Fifth and Sixth Amended Petitions. As a result, these causes of action shall be remanded to state court. In sum, this Court shall (1) dismiss Jones' causes of action identified as Erie County Index Nos. 2611–91, 14730–91, 1637–92, and 1049–88 for the reasons explained below, however, these actions shall be remanded to the appropriate state court for the limited purpose of assessing whether it is appropriate to sanction Jones; and (2) remand Erie County Index No. 8950–89 as well those actions identified in Jones' Fifth and Sixth Amended Petitions.

### IV. *Substantive Bases for Dismissal and/or Remand*

On June 9, 1989, Judge Curtin ruled from the bench dismissing three of Jones prior cases, 87–CV–1532, 88–CV–887, and 89–CV–253, and also issued the following Order enjoining Jones from bringing future related causes of action:

In light of plaintiff's history of litigation in this Court which has been set forth in the argument and on the papers, which have been supplied to the Court, it is clear that these lawsuits have been vexatious, harassing and duplicative. They have put an undue expense and burdens on the parties, on Court personnel, the Court and as a result of that history plaintiff is also directed not to file any further lawsuits in this or any other court relating to the subject matter of the actions that have been dismissed by this Court, either today or at a previous time. All of the plaintiff's cases are now closed, and the Clerk of the Court of the Western District of New York is directed not to accept ... any further filings regarding these or any other cases plaintiff should wish to bring in the future involving any of the issues that have already been decided in these cases. These orders are issued pursuant to the Court's authority under the All Writs Act, 28 U.S.C., Section 1651(a). The court will set up a procedure with the clerk so that if there is any attempt to file by the plaintiff that a procedure will be in force to take up the filing and determine whether or not it involves these or any other cases, which have already been decided.[8]

*Walter Jones v. City of Buffalo, et. al.,* Nos. 87–CV–1532, 88–CV–887, & 89–CV–253 (W.D.N.Y. June 9, 1989). Although Jones asserts otherwise, this order is valid. The All Writs Statute contained in 28 U.S.C. § 1651(a) permits a district court to enjoin litigants from further vexatious litigation. *Abdullah v. Gatto,* 773 F.2d 487, 488 (2d Cir.1985) (holding that district court was within its discretion in limiting prisoner's ability to bring *in forma pauperis* actions at will); *In re Hartford Textile Corp.,* 681 F.2d 895, 897 (2d Cir.1982) (section 1651(a) gives the court the power to enjoin a vexatious litigant from filing future motions), *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1195, 75 L.Ed.2d 439 (1983); *Ward v. Pennsylvania*

*New York Cent. Transp. Co.,* 456 F.2d 1046, 1048 (2d Cir.1972) (district court dismissed a state action which was removed to federal court because of federal court injunction against the plaintiff filing future related actions); *Sperry Rand Corp. v. Rothlein,* 288 F.2d 245, 249 (2d Cir.1961) (when federal court believes that another suit is being brought to undermine decision already made by court, injunction is proper). Excessive litigiousness alone does not justify such an order, it must also be found that "the courts are being used as a vehicle of harassment by a 'knowledgeable and articulate experienced pro se litigant' who asserts the same claims repeatedly in slightly altered guise." *Kane v. New York,* 468 F.Supp. 586 (S.D.N.Y.), *aff'd without op.,* 614 F.2d 1288 (2d Cir.1979). Here, Judge Curtin's Order was supported by such findings as he found that the "lawsuits have been vexatious, harassing and duplicative. They have put an undue expense and burdens on the parties, on Court personnel, the Court, . . . ." Faced with a litigant employing such tactics, it is also appropriate to enjoin the filing of future claims without first obtaining leave of the court. *See In re Martin–Trigona,* 737 F.2d 1254, 1262 (2d Cir.1984) ("The district court is part of the federal judicial system and has an obligation to protect and preserve the sound and orderly administration of justice throughout that system.") Finally, this Court finds that Judge Curtin's Order is not so burdensome as to deny Jones meaningful access to the courts. Based on the foregoing, the Order enjoining Jones from filing future related actions must be enforced.

Before proceeding to apply Judge Curtin's Order to the claims advanced by Jones here, this Court notes that in each successive removal petition Jones has sought to consolidate all claims removed to 92–CV–345, apparently based on his view that all of the state causes of action are inexorably linked by the conspiracy which allegedly pervades them. However, whereas this Court has not-

---

**8.** Unfortunately, this procedure was not adhered to in May through September 1992 when Jones filed his initial petition, as well as several supplemental removal petitions. This was, in part, a result of this Court's lack of familiarity with the Jones' prior federal court actions, including the

Order issued by Judge Curtin. Accordingly, the procedure put in place by Judge Curtin was not adhered to regarding these initial submissions. On the other hand, this procedure has been applied with respect to Jones' most recent petitions filed in May and June of 1994.

ed that assertion of this conspiracy theory is baseless and frivolous as well as a violation of Judge Curtin's Order, this single theory which Jones claims links all of these separate causes of action together and serves as the basis for their consolidation, instead is the basis for their dismissal/remand.

This Court first considers Erie County Index Nos. 2611–91, 14730–91, 1637–92, and 1049–88 wherein Jones was proceeding as the plaintiff. Jones' action of bringing these cases violates Judge Curtin's Order as well as constitutes vexatious and malicious conduct as evidenced by several considerations. While Jones has injected new factual elements into the claims he makes, the overriding theory being advanced is that of a continually expanding conspiracy whose origins can be traced to the facts underlying Jones' original complaints for which all legal action is now foreclosed. For instance, on pages eight and nine in the "SIXTH" paragraph of Jones' complaint filed under Erie County Index No. 14730–91 on April 23, 1992, Jones claims that his "claims against the forementioned and described governmental co-conspirators, is ... evidenced in Plaintiff's State, and federal courts civil actions Erie County Index Nos. 01049–88, 2611–91, WDNY Federal Docket Nos. 87–1523C, 88–0887C, 89–0253, 89–1117, 89–1088L, 90–0688." Further, in the "NINTH" paragraph on page eleven of the same complaint, Jones asserts that the "arson and murder crimes" he alleges have "been concealed by former and present U.S. attorneys, federal County and states judges, federal, County and state clerks, and ..." In addition, paragraph twenty-two of the complaint Jones filed in state court on April 29, 1992, under Erie County Index No. 1637–92, states that "at all times material to this Verified Complaint the forestated unlawful acts, and denial of the plaintiff's constitutionally protected and demanded jury trials, and denial of demanded injunctions, ... in plaintiff's federal actions, WDNY docket nos. 87–1532C, 88–0887C, 89–0253C, 89–0061E–C, 89–1088L, and 89–1117E, were concealed and covered up...." Similar allegations are present throughout the record regarding these causes of action. This Court finds such charges to be baseless

and, moreover, to be foreclosed by Judge Curtin's Order.

Further, this Court notes that in Erie County Index No. 8950–89 Jones makes similar conspiracy allegations which are not only frivolous, but violate Judge Curtin's Order. In addition, the cause of action had previously been removed to federal court by third-party defendants named by Jones under Docket No. 89–1088. Judge Larimer dismissed all of the claims raised in Jones' third-party complaint and remanded to state court the remaining state law claims that were originally made against Jones. Jones has essentially realleged the claims dismissed by Judge Larimer. Further, Jones' continued assertion of his conspiracy theory and that such theory has been broadened to include Judge Larimer is evidenced by statements in his Second Amended Petition regarding Judge Larimer's ruling against him in 89–1088. For instance, Jones asserts that a footnote in Judge Larimer's Decision and Order "was based upon certain information, said court obtained from the United States Court of Appeals, for the Second Circuit, which evidences that said court was unlawfully conferring, scheming, and conspiring with the clerks, attorneys and the judges of the district and circuit courts, to deprive petitioner of his rights and liberties ..." (Second Amended Petition ¶ 28.) It is clear that not only are Jones' claims associated with Erie County Index No. 8950–89 baseless and frivolous, they are also barred by Judge Larimer's prior Decision and Order. Similarly, Jones' complaint of August 13, 1992 must also be dismissed as baseless and frivolous, as contrary to Judge Curtin's Order, and because it asserts claims previously dismissed by Judge Larimer. *See* Docket No. 89–CV–1088, Decision and Order dated December 12, 1989.

Finally, there are Jones' two most recent amended removal petitions. As with the other claims removed by Jones, these too are premised on his baseless claims of a constitutional and civil rights conspiracy. For example, in the May 27, 1994, petition Jones makes repeated reference to the fact that his removal is based upon the "retaliatory conspiracy" that is being waged against him.

Also, Jones' assertion in his June 14, 1994, petition that the underlying state action "be joined with related state court actions" is far too vague to justify allowing the amendment and consolidation and thereby permitting removal. Again, it appears that the only relatedness is Jones' baseless conspiracy theory. Accordingly, there is no basis for federal jurisdiction over the causes of action. Further, as noted earlier, Jones attempts to remove these actions to Docket No. 92–345 must fail because there is no valid basis to allow for consolidation or otherwise allow for amendment of the removal petition at this time. For these reasons, this Court, by its Order of June 24, 1994, remanded all of these claims to state court.

The overall vexatious nature of this litigation is also evidenced by the fact that Jones has continually updated the defendants named in his actions to include the attorneys who oppose him and any judicial officer who happens to rule against him. For instance, Jones has asserted claims against the following judges and political figures: (1) James D. Griffin, former Mayor of the City of Buffalo; (2) Assemblyman Arthur O. Eve; (3) the Honorable Vincent E. Doyle, Justice of the State of New York; (4) the Honorable Joseph Sedita, Justice of the New York State Supreme Court; (5) David M. Swartz, Erie County Clerk; (6) Jeffrey A. Spencer, Law Clerk in New York State Supreme Court; (7) Michael Risman, Senior Deputy Corporation Counsel for the City of Buffalo; (8) Laurence K. Rubin, Corporation Counsel for the City of Buffalo; (9) Peter B. Sullivan, Assistant Attorney General; and (10) all of the presiding Judges of the United States District Court for the Western District of New York. As noted by the Second Circuit Court of Appeals in *In re Martin–Trigona*, 9 F.3d 226 (2d Cir.1993), "[m]aking judges defendants in a repetitive series of lawsuits whenever a judge rules against a litigant is also a tactic employed by many vexatious litigants." *Id.*, 9 F.3d at 230.

■ This Court also finds it relevant to discuss *Ward v. Pennsylvania New York Central Transp. Co.*, *supra*, which involved a scenario strikingly similar to the present case. The plaintiff had filed four previous unsuccessful actions against the defendants in federal district court. The district court eventually ordered that the plaintiff not be permitted to commence further similar actions against the defendants without leave of the court. Plaintiff thereafter brought an action in state court to circumvent the injunction by the district court. Defendants removed the case to federal court and filed motions to dismiss, which were granted. On appeal, the Second Circuit affirmed this decision. Like the plaintiff in *Ward*, it appears that Jones attempted to circumvent Judge Curtin's Order by proceeding with his claims in New York State Supreme Court. However, unlike the *Ward* case, it was Jones himself who chose to return to this federal forum via his removal petitions, and, therefore, it was Jones who chose to directly challenge the authority of this Court to enforce its lawful orders. Thus, as in *Ward*, this Court finds that Jones' cases identified as Erie County Index Nos. 2611–91, 14730–91, 1637–92, and 1049–88 must be dismissed in that the complaints underlying these causes of action, despite the interjection of some new factual material, remain dominated by Jones' conspiracy theories which were the basis for the lawsuits dismissed by Judge Curtin.

Therefore, for all of these reasons, Jones claims identified under Erie County Index Nos. 2611–91, 14730–91, 1637–92, and 1049–88 shall be dismissed, but with a limited remand to the appropriate state courts for the assessment of sanctions against Jones. Further, the reasons explained above provide an alternative basis for remand of the Erie County Index No. 8950–89 as well as all claims raised in Jones' Fifth and Sixth Amended Petitions.

### CONCLUSION

For the reasons set forth above, this Court shall direct that Jones' actions identified as Erie County Index Nos. 2611–91, 14730–91, 1637–92, and 1049–88 be dismissed, but the Clerk of the Court shall remand these actions to the appropriate state court for a determination as whether Jones should be sanctioned for his conduct in these lawsuits. Further, Erie County Index No. 8950–89 shall be remanded to state court, and Jones'

related complaint of August 13, 1992, shall be dismissed. Further, as directed by this Court's previous Order of June 24, 1994, the causes of actions which Jones attempted to remove to this Court via his Fifth and Sixth Amended petitions shall be remanded to state court. Finally, as set forth below, this Court shall reaffirm Judge Curtin's prior Order establishing a procedure with the Clerk of the Court for handling any future filings, including complaints, removal petitions, or otherwise, to ensure that such future filings involve the subject matter of neither this nor any other cases which have already been decided.

### ORDER

IT HEREBY IS ORDERED, that the Order of this Court referring all pretrial matters to Magistrate Judge Foschio filed on September 21, 1992, is REVOKED.

FURTHER, that the Clerk of the Court is directed to strike all entries of default made under Docket No. 92–CV–345.

FURTHER, that the causes of action removed to this court identified as Erie County Index Nos. 2611–91, 14730–91, 1637–92, and 1049–88 are DISMISSED.

FURTHER, that the Clerk of the Court is directed to remand the causes of action identified as Erie County Index Nos. 2611–91, 14730–91, 1637–92, and 1049–88 to the appropriate state courts for determination of the sole issue of whether sanctions should be imposed against Walter Jones.

FURTHER, that Walter Jones' Complaint filed on August 13, 1992, is DISMISSED.

FURTHER, that Walter Jones' claims as a third-party plaintiff asserted in the cause of action identified as Erie County Index No. 8950–89 are DISMISSED, and the Clerk of the Court is otherwise directed to REMAND this action to the appropriate state court for further proceedings.

FURTHER, that consistent with this Court's Order of June 24, 1994, all causes of action which Walter Jones attempted to remove to this court via his Fifth and Sixth Amended petitions filed on May 27, 1994 and June 14, 1994, respectively, are REMANDED to the appropriate state court.

FURTHER, that all causes of action having been removed to this Court under Docket No. 92–CV–345 having been dismissed and/or remanded to state court, this Court shall DENY all pending motions identified under Docket No. 92–CV–345 as moot.

FURTHER, that the Clerk of the Court is directed to take the appropriate steps to close the file relating to this action.

FURTHER, that the Clerk of the Court is directed to not accept for filing, except in accordance with the procedure set forth below, any complaints, removal petitions, or other submissions from Walter Jones.

FURTHER, that in the future all submissions, if any, of Walter Jones in this district shall be stamped as received by the Clerk of the Court and shall be directed by the Clerk of the Court to the Pro Se Law Clerk for the Western District of New York.

FURTHER, that as part of any future submissions, Walter Jones must include an affidavit indicating that such submission is not of vexatious or malicious intent and that the allegations contained therein are not duplicative of the subject matter of his prior lawsuits.

FURTHER, that upon delivery to the Pro Se Law Clerk, the Pro Se Law Clerk shall conduct an initial review of such submissions to determine if their subject matter is connected with Walter Jones' prior lawsuits discussed in this Decision and Order.

FURTHER, that the Pro Se Law Clerk shall submit to an available district court judge, as designated by the Clerk of the Court, a recommendation as to whether such submissions should be filed by the Clerk of the Court.

FURTHER, that the Clerk of the Court shall deem and stamp such submissions as filed only upon direction from the designated district court judge.

FURTHER, that if upon review of the designated district court judge it is determined that the submission of Walter Jones is connected to the subject matter of his prior lawsuits, such submission shall be returned

to the Clerk of the Court who shall return such submission to Walter Jones by mail.

SO ORDERED.