**UNITED STATES of America**

v.

**D'Ron Lamar HARMON.**

No. 4:98–CR–169–A.

United States District Court,
N.D. Texas,
Fort Worth Division.

Oct. 23, 1998.

Michael P. Heiskell, Attorney at Law, Johnson Vaughn & Heiskell, Fort Worth, TX, Douglas C. Greene, Fort Worth, TX, for Defendant.

J. Michael Worley, Attorney at Law, Fort Worth, TX, for Plaintiff.

## MEMORANDUM OPINION and ORDER

McBRYDE, District Judge.

On October 16, 1998, defendant, D'RON LAMAR HARMON, ("Harmon") filed motions (1) for substitution of counsel, (2) to extend time for filing motion to recuse, (3) to extend time for filing motion to suppress, (4) to suppress, and (5) to recuse. The court, having considered the motions, the responses of United States of America, the record, and applicable authorities, concludes that the first three motions should be granted; that the motion to suppress should be set for hearing; and that the motion to recuse should be denied.

### I.

#### Background

On September 9, 1998, Harmon made his initial appearance before United States Magistrate Judge Charles Bleil on September 9, 1998, at which time Magistrate Judge Bleil signed an order appointing the Federal Public Defender for the Northern District of Texas as attorney for Harmon. Assistant Federal Public Defender Douglas Greene appeared for and represented Harmon at the initial appearance. The indictment in this case was returned September 17, 1998. Harmon appeared before the undersigned judge for arraignment on September 25, represented by Assistant Federal Public Defender Greene. A trial setting order was signed September 25 fixing a trial date of November 16, 1998.

On October 16, 1998, Harmon, acting through newly retained counsel, Michael P. Heiskell, ("Heiskell") filed the motions that are the subject of this memorandum opinion and order. The factual predicate for the

1. This is the second time Heiskell has replaced another defense attorney and then unsuccessfully sought to cause the undersigned judge to recuse.

motion to recuse is that Heiskell gave testimony as a witness against the undersigned judge at a proceeding conducted by a special committee purportedly functioning under the authority of 28 U.S.C. § 372(c)(5).

### II.

#### The 28 U.S.C. § 372(c)(6) Ground of the Motion

■ Apparently Harmon asserts as a ground of his motion to recuse that the undersigned judge should not participate in this case by reason of an order of the Judicial Council of the Fifth Judicial Circuit. A December 31, 1997, order of the Judicial Council, which was entered in what purported to be proceedings against the undersigned judge under 28 U.S.C. § 372(c), provides in its paragraph 3 that:

3. Pursuant to 28 U.S.C. § 372(c)(6)(B)(vii), Judge McBryde, for a period of three (3) years from the effective date of this Order, is not to participate in (i) cases now pending before him (other than any as to which there are appellate proceedings) in which any of the attorneys listed on Attachment A are currently involved, and (ii) any and all cases filed after the effective date of this order in which the initial notice of appearance includes any of the attorneys listed on Attachment A.

Inasmuch as this case was not pending when the December 31 order went into effect, the only part of the order that has any potential applicability here is the (ii) part, which directs that the undersigned judge not participate in cases filed after the effective date of the order in which "the initial notice of appearance includes any of the attorneys listed on Attachment A." Heiskell is an attorney whose name appears on the attachment to the December 31 order. However, as noted under section I. of this memorandum opinion and order, the initial notice of appearance for Harmon did not include Heiskell, with the consequence that the December 31 order does not apply.[1] Moreover, a clari-

See April 15, 1998, motion to recuse in United States v. Wright, No. 4:92-CR-190-A, and the

fication order of the Judicial Council dated March 2, 1998, specifically provides that:

> If counsel for a party withdraws from the case, and the new counsel who appears is an attorney listed on Attachment A, or if an attorney listed on Attachment A enters an appearance as additional counsel, that appearance by new or additional counsel does not require that Judge McBryde withdraw from participation in that case, and the matter need not be reassigned to another judge.

Therefore, even if the assumption is made that the December 31 order is lawful, it would not require the undersigned judge to withdraw from participation in this case.[2]

### III.

#### *The 28 U.S.C. § 455(a) Ground of the Motion to Recuse*

■■■ Harmon also relies on 28 U.S.C. § 455(a) as a statutory ground of his motion to recuse. It reads:

> (a) Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

28 U.S.C. § 455(a). The movant in a § 455(a) motion "must show that, if a reasonable man knew all of the circumstances, he would harbor doubts about the judge's impartiality." *Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1165 (5th Cir.1982), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983). *Accord United States v. Tucker*, 78 F.3d 1313, 1324 (8th Cir.), *cert. denied*, — US. —, 117 S.Ct. 76, 136 L.Ed.2d 35 (1996). "[A]ll of the circumstances" in this case are that Harmon was originally represented by the Federal Public Defender and that he is now represented by an attorney who gave testimony against and adverse to this judge in his presence. As a matter of law, these circumstances would not cause a reasonable man, knowing of them, to harbor doubts about this judge's impartiality.

■ The "impartiality" test has to do with the judge's presumed attitude toward a party to the litigation, not toward the party's attorney. *See Standing Comm. v. Yagman*, 55 F.3d 1430 (9th Cir.1995); *In re Cooper*, 821 F.2d 833, 841 (1st Cir.1987); *United States v. Burt*, 765 F.2d 1364, 1368 (9th Cir.1985). As a general rule, a judge's attitude toward a party's attorney does not have any bearing on whether the judge should be disqualified. *See Panzardi–Alvarez v. United States*, 879 F.2d 975, 984 (1st Cir.1989), *cert. denied*, 493 U.S. 1082, 110 S.Ct. 1140, 107 L.Ed.2d 1045 (1990) (noting that "it is insufficient to rely on 'clashes between court and counsel' as the basis of a disqualification motion"); *Davis v. Board of Sch. Comm'rs of Mobile County*, 517 F.2d 1044, 1050, 1052 (5th Cir.1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976) (holding that disqualification on the basis of bias or prejudice or lack of impartiality should focus on the party rather than counsel). There is no suggestion that this judge's impartiality as to Harmon is subject to any question or that anyone would reasonably believe it is.

■■ Section 455(a) "must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir.1993) (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1235 (10th Cir.1986)). For example, a judge is not disqualified merely because a litigant sues or threatens to sue him. *See United States v. Grismore*, 564 F.2d 929, 933 (10th Cir.1977), *cert. denied*, 435 U.S. 954, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978); *Jones v. City of Buffalo*, 867 F.Supp. 1155, 1163 (W.D.N.Y. 1994); *United States v. Blohm*, 579 F.Supp. 495, 505 (S.D.N.Y.1983); *In re Martin–Trigona*, 573 F.Supp. 1237, 1243 (D.Conn.1983), *appeal dism'd*, 770 F.2d 157 (2d Cir.1985), *cert. denied*, 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986). It necessarily follows that the taking of legal action by an attorney

---

April 15, 1998, order denying the motion to recuse.

**2.** This judge is of the belief that the December 31, 1997, order is unauthorized, unconstitution-

al, and unlawful. However, there is no occasion to deal in this memorandum opinion and order with any of the issues related to the enforceability of the order.

for a litigant, such as the giving of testimony against and adverse to the judge in an administrative proceeding, would not cause the judge to be disqualified. As one judge articulated:

> It is one of the earliest and most fundamental lessons of judging that a judge must rule on the merits without regard to the personality of the attorney or any unpleasant experiences the judge may have had with the attorney in the past.

*United States v. Helmsley,* 760 F.Supp. 338, 341 (S.D.N.Y.1991), *aff'd,* 963 F.2d 1522 (2d Cir.1992).

▮ Nor is a judge required to recuse simply because a party, or an attorney for a party, has personally attacked the judge in other proceedings. *E.g., United States v. Olander,* 584 F.2d 876, 888 (9th Cir.1978) (defendant had been leader in efforts to impeach the judge, including newspaper and television appearances; motion to disqualify denied, and affirmed on appeal), *vacated on other grounds,* 443 U.S. 914, 99 S.Ct. 3104, 61 L.Ed.2d 878 (1979). "Prior written attacks upon a judge are likewise legally insufficient to support a charge of bias or prejudice on the part of a judge toward the author." *United States v. Bray,* 546 F.2d 851, 858 (10th Cir.1976). "A party cannot force disqualification by attacking the judge and then claiming that these attacks must have caused the judge to be biased against him...." 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3542, at 577–78 (2d ed.1984). In *Cooley,* the Tenth Circuit noted, by quoting from an earlier decision, that "[t]he mere fact that a defendant has made derogatory remarks about a judge is insufficient to convince a sane and reasonable mind that the attacked judge is biased or prejudiced," 1 F.3d at 994 n. 5, and added that:

> The same is true regarding an objective person, knowing all the facts, assessing whether the judge's impartiality may *reasonably* be questioned. Any other conclusion would allow defendants to cause the recusal of judges simply by making scurrilous and disparaging remarks or charges about them. Permitting parties to manipulate the system with falsehoods or insults

in such a manner would be a bizarre application of 455(a) ....

*Id.* In *Bray,* the failure to recuse was affirmed even though the party who sought recusal had

> obtained 2000 signatures of persons desiring the removal of the judge; ... had written an article calling for the impeachment of the judge; ... had a prior case dismissed by the judge; ... had written a protest telegram against the judge; and ... had filed a brief with the court accusing the judge of bribery, conspiracy, and the obstruction of justice.

546 F.2d at 857.

▮ Finally, a judge is not to treat lightly his obligation to perform his duties as a judge. Indeed, "[t]here is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *Cooley,* 1 F.3d at 994 (quoting *Hinman v. Rogers,* 831 F.2d 937, 939 (10th Cir.1987)). *See also Bray,* 546 F.2d at 857. If a motion to disqualify is not well-grounded, the proper resolution of the motion, both as a matter of law and judicial ethics, is to deny it. From the standpoint of ethics, Canon 3(A)(2) of the Code of Conduct for United States Judges provides that "[a] judge should hear and decide matters assigned, unless disqualified...." As for the law, the Seventh Circuit has explained that:

> A judge may decide close calls in favor of recusal. But there must first be a close call. As we put it in *Suson v. Zenith Radio Corp.,* 763 F.2d 304, 308–09 n. 2 (7th Cir.1985), a "district judge is ... obligated not to recuse himself without reason just as he is obligated to recuse himself when there is reason."

*New York City Hous. Dev. Corp. v. Hart,* 796 F.2d 976, 980–81 (7th Cir.1986). The Tenth Circuit recently said that "a judge has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." *Nichols v. Alley,* 71 F.3d 347, 351 (10th Cir.1995). The undersigned would be shirking his judicial duties if he granted the motion to recuse.

There is no valid reason why there should be an exception to the rules discussed above

simply because Heiskell testified against the undersigned in a § 372(c)(5) proceeding. The fact that such a proceeding has been conducted and that lawyers testified for or against a judge at such a proceeding should not permit the law of recusal to be distorted. Such a distortion would, in turn, distort the § 372(c)(5) proceeding itself. An attorney who has a vengeful attitude toward, or a motive to harm, a judge would be rewarded by coming forward to testify against the judge if such an attorney could thereafter cause the judge to recuse by appearing in a case pending on the judge's docket.

More generally, there is nothing to indicate that an exception should be made to the rule that the impartiality test relates to the judge's presumed attitude toward a party, not the party's attorney, simply because the attorney has taken action adverse to the judge in a § 372(c)(5) proceeding. If involvement of an attorney in a § 372(c)(5) proceeding against a judge were to mandate recusal, such a proceeding would have a wholly unintended effect—the mere conduct of such a proceeding, without regard to its merit, would have the potential to severely interfere with the judge's future judicial activities, and to have a dramatic impact on the rights of attorneys and litigants who then or in the future have cases on the judge's docket.

A highly undesirable by-product of a rule of mandatory recusal based on the mere fact that testimony has been given against a judge in a § 372(c)(5) proceeding is that it would provide an attorney participant in the proceeding judge-shopping privileges in contravention of established policy. The recusal mechanism provided by law is not "intended to bestow veto power over judges or to be used as a judge shopping device." *Nichols v. Alley*, 71 F.3d at 351. As the Seventh Circuit has explained, permitting unilateral strikes of federal judges is contrary to congressional intent and will adversely affect the judicial system:

A judge who removes himself whenever a party asks is giving that party a free strike, and Congress rejected proposals (now in effect in some states) to allow each party to remove a judge at the party's option.

Automatic disqualification allows the party to manipulate the identity of the decision-maker and may be no more healthy for the judicial system than is the denial of a borderline motion. At least this is the belief reflected in the existing statutes.... [R]eady recusal benefits the judge who steps aside, and the litigant who sought this outcome, but it may injure the judge who must take over the case and the litigant aggrieved by the substitution. Until Congress decides that the costs of recusal on demand are worth bearing, judges must evaluate each motion to decide whether under objective standards the judge's impartiality might reasonably be doubted.

*New York City Hous. Dev. Corp.*, 796 F.2d at 981.

The § 455(a) analysis is not changed by the fact that the Judicial Council has entered an order affecting case assignments to the undersigned. Obviously, the December 31, 1997, order of the Judicial Council is not a recusal order. It does not follow the recusal scheme. Indeed, Rule 1(e) of the Fifth Circuit's own rules for proceedings under the Judicial Conduct and Disability Act states that "the complaint procedures may not ordinarily be used to ... [h]ave a judge disqualified or recused from a case." In previous complaint proceedings involving other judges, Chief Judge Politz of the Fifth Circuit has repeatedly acknowledged that "misconduct procedures may not be used to remove a judge from a particular case," *In re Docket No. 96–05–372–0019*, (Politz, C.J., Jan. 8, 1996), and that such a remedy "cannot be afforded by the misconduct process." *In re Docket No. 97–372–0063* (Politz, C.J., May 21, 1997).

Neither of the cases defendant cites supports the ruling he seeks. In *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101 (5th Cir.), *cert. denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980), the Fifth Circuit held that the trial judge should have recused based upon the appearance of partiality caused by relationships between the judge and the chief attorney for the plaintiff—they had been former law partners, the judge's father was a partner in the law firm of the

attorney (with a financial interest in the profitable results of the law firm), the lawyers in the firm had personally represented the judge in various matters, and they had enjoyed an ongoing, friendly relationship where they had occasionally invested together with their clients and other members of the law firm in real estate transactions, some of which investments had resulted in lawsuits where they were both named as parties and in which they were represented by the law firm. The Fifth Circuit held that those relationships gave rise to several potential grounds for disqualification of the judge under § 455(a), because a reasonable person with knowledge of those relationships might very well question the judge's impartiality in a trial involving a party represented by that counsel.

In *United States v. Anderson,* 70 F.3d 353 (5th Cir.1995), the Fifth Circuit held that this judge "should have recused himself from this case prior to sentencing." 70 F.3d at 353. Then there is a discussion of the disputes between this judge and the United States Attorney's Office over how the *Anderson* case should proceed, and this judge's disagreement with the positions of the assistant United States attorney and defendant Anderson in the case. After the factual discussion, and after holding that no constitutional right of Anderson was violated, the Fifth Circuit nonetheless held that the sentence should be vacated and the case assigned to a different judge for resentencing. So far as this judge can discern, there is no citation in the opinion to § 455(a), and, other than a recitation of cases involving that statute, no explanation as to how it would apply in *Anderson.* However, a study of the record in *Anderson* is instructive. The statements of recusal issues made by Anderson in his brief on appeal were that this judge should recuse because of actions · taken against Anderson himself, and because of the perception of bias on the part of this judge against Anderson himself. If any rationale can be given for the ruling in *Anderson,* it would be that recusal was required because of bias, or the appearance of bias, by this judge against the party, not his attorney.

## IV.

## *ORDER*

Accordingly,

The court ORDERS that:

(1) Harmon's motion to substitute counsel be, and is hereby, granted, the Federal Public Defender for the Northern District of Texas be, and is hereby, withdrawn as Harmon's counsel, and Heiskell be, and is hereby, substituted for the Federal Public Defender for the Northern District of Texas as counsel for Harmon in this action;

(2) Harmon's motion to extend time for filing motion to recuse be, and is hereby, granted, and his motion to recuse be, and is hereby, deemed timely filed;

(3) Harmon's motion to extend time for filing motion to suppress be, and is hereby, granted, and his motion to suppress be, and is hereby, deemed timely filed;

(4) Harmon's motion to suppress be, and is hereby, set for hearing at 11:00 a.m. on October 30, 1998; and

(5) Harmon's motion to recuse be, and is hereby, denied.